**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

RICHARD B. KEENE,

          Plaintiff,

     v.

CLARK COUNTY SCHOOL DISTRICT,

          Defendant.

Case No. 2:14-cv-00381-APG-PAL

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

ECF Nos. 39, 40

Plaintiff Richard B. Keene has brought employment discrimination claims against his former employer, defendant Clark County School District ("CCSD"), for violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 *et seq.*  USERRA prohibits discrimination against persons because of their service in the uniformed services.  Keene's complaint alleges claims for: (1) discrimination and retaliation in violation of §§ 4311(a), 4312 & 4313; (2) retaliation in violation of §§ 4311(c), 4312, & 4313; and (3) failure to provide rights and benefits in violation of § 4316.[1]

Keene's complaint alleges numerous acts of discrimination and retaliation by CCSD, including failure to reemploy him in May, June, and November 2008—after completion of his service with the Army—as well as later acts of retaliation.  Keene moves for partial summary judgment on whether CCSD violated USERRA when it allegedly failed to reemploy him in May, June, and November 2008. ECF No. 39.

CCSD moves for summary judgment on all of Keene's claims. ECF No. 40.  First, CCSD argues that Keene never suffered an adverse employment action while working at CCSD. Specifically, it argues that Keene's June 2008 inquiry was not a request for reemployment under USERRA, and that CCSD properly rehired Keen in November 2008.[2]  It also contends that there

---

[1] I previously dismissed count 4 of the complaint, a claim for willful acts in violation of § 4316. ECF No. 28.

[2] CCSD does not reference the May 2008 communication in its motion to dismiss.

1   is no evidence that any of CCSD's actions were done with a discriminatory or retaliatory motive.
2   CCSD argues that Keene lacks evidence to support his claim of failure to provide rights and
3   benefits under § 4316(a).  Finally, CCSD argues that Keene is not entitled to liquidated damages
4   on any of his claims because there is no evidence that any of CCSD's acts were willful.

5        Keene is entitled to summary judgment regarding the June and November 2008 events
6   because CCSD did not return him to the position he held before leaving for military service.
7   CCSD is entitled to summary judgment as to Keene's discrimination and retaliation claims related
8   to actions after November 2008.  CCSD is also entitled to summary judgment as to Keene's claim
9   for failure to provide rights and benefits under § 4316(a), except those related to his November
10  2008 reemployment.  Genuine issues of material fact exist regarding the other claims and
11  allegations in the complaint, precluding summary judgment for either party.

12  **I.**      **BACKGROUND**

13       Keene began working for CCSD in August 2004 as a math teacher. ECF No. 39-1 at 3.  In
14  2005, Keene applied and was selected for the administrative position of Data Coordinator III,
15  Northeast Region. *Id.*  This was a "range 40" position on CCSD's Unified Administrative Salary
16  Schedule. ECF No. 40-4 at 6.  Prior to and throughout his employment with CCSD, Keene also
17  served as a reservist for the Army. ECF No. 39-1 at 3.  Keene reported for military duty one
18  weekend a month and for annual training two weeks per year. *Id.* at 3.

19       In 2007, Keene informed CCSD that he would be activated by the Army for deployment
20  to Iraq in 2008. *Id.* at 3-4.  In preparation for his deployment, Keene was required to attend
21  various training exercises between August 2007 and May 2008 that required him to take military
22  leave from his job at CCSD. *Id.*  The length of these training exercises ranged from two days to
23  several weeks. *Id.*  Keene provided notice to CCSD prior to each training exercise, and each time
24  was granted leave. *Id.*, *see also* ECF No. 40-5 at 11.  After each training exercise ended, Keene
25  reported back to work at CCSD. ECF No. 39-1 at 4.  Keene states that while his requests for
26  military leave were always granted, they were met with hostility by his direct supervisor Arlene
27  Lewis, CCSD's Director of Research and School Improvement. *Id.*, ECF No. 40-5 at 15.  He

28

states that in early 2008, Lewis told him that he needed to "make up his mind" and decide whether he was working for CCSD or the Army. *Id.* Lewis does not remember making any such comment and states that she was always very supportive of Keene's military service. ECF Nos. 40-5 at 16, 41-1 at 4-5.

In April 2008, Keene requested approval from CCSD to apply for extended military duty from June 2008 to August 2008. ECF No. 39-1 at 36-38. The request was approved by Lewis. *Id.* The extended duty was meant to cover the gap period between when Keene's training exercises ended in May and when his unit would be deployed in September. *Id.* at 4.

On May 5, 2008, Keene began another pre-deployment training exercise that was scheduled to last until May 28. *Id.* at 4, 19. On May 25, Keene was informed by the Army that his request for extended duty had not been funded and therefore was denied. *Id.* at 4. Over the next few days, Keene spoke with various Army personnel in the hopes of obtaining funding. *Id.* at 4-5. However, no funding was approved. *Id.*

Keene states that on May 28, when his pre-deployment training ended and after it was confirmed that he would not be accepted for extended duty, he contacted Lewis to inform her that he would be returning to work at CCSD the following day. *Id.* at 5. According to Keene, Lewis told him that his "services were no longer required," which Keene understood to mean he was being terminated from his position at CCSD. *Id.* Lewis states that she does not remember any communication with Keene in May 2008 and that she never informed Keene that his employment was terminated. ECF Nos. 40-5 at 16, 43-4 at 29-30.[3]

_____

[3] In both his reply to his motion for partial summary judgment and in his opposition to CCSD's motion, Keene argues that several of the affidavits submitted by CCSD are "sham affidavits" which directly contradict prior testimony given during depositions. ECF Nos. 43 at 24, 47 at 2. But other than referencing the sections of the affidavits he claims to be contradictory, Keene offers no explanation as to how or why the affidavits contradict deposition testimony, save for Lewis's affidavit. Nor does Keene cite to the sections of the depositions which he claims the affidavits contradict.

With regard to Lewis, Keene argues that the statement in her affidavit that she never informed Keene that he was terminated is contradicted by her deposition testimony in which she says she does not remember having a phone call with Keene in May. *Compare* ECF No. 40-5 at 15-16 *with* 43-4 at 29-30. I disagree. Lewis's statements that she never told Keene he was

1    Two days later, on May 30, Keene filed a request for unemployment benefits. ECF No.

2  39-1 at 5.  CCSD did not challenge Keene's request and he received the benefits. *Id.*  Keene states

3  that he sought unemployment benefits to mitigate his wage losses from being terminated by

4  CCSD. *Id.*  The "Info Request" form filled out by CCSD related to this unemployment request

5  states the reason for the separation as "military leave of absence." *Id.* at 43.

6    On June 4, 2008, Lewis filled out a performance evaluation for Keene for the 2007-2008

7  school year. ECF No. 40-6 at 2-3.  Lewis gave Keene the highest rating possible in all

8  performance categories. *Id.*  However, in the summary section of the performance review, Lewis

9  wrote that "2007-2008 has been a difficult school year for Dr. Brian Keene. . . . His time and

10  efforts were divided between his duty to our country . . . and his responsibilities here at CCSD.

11  Dr. Keene was unable to perform many of the tasks normally completed by data coordinators for

12  the NE Region as he was absent over 70 days." *Id.*

13    After Keene's alleged May 28 communication with Lewis asking to return to work, the

14  next time Keene communicated with CCSD was on June 12, when he sent an email to both Lewis

15  and Marsha Irvin, Superintendent for the Northeast Region. ECF No. 40-5 at 13.  In the email,

16  Keene stated that his application for extended duty was not funded as expected and therefore he

17  was back in town. *Id.*  Keene wrote that he saw that CCSD had not yet found a replacement for

18  his position and so he "wanted to offer to come on as a temp to help support these schools

19  through appeals." *Id.*  On June 16, Irvin responded by thanking him for his "offer to assist," and

20  stating that when the district learned he would be away on military leave, it "put a plan in place to

21  handle" the work in his absence. *Id.*

22    On July 24, Keene received his orders for mobilization and deployment, requiring him to

23  report for duty on September 7. ECF No. 39-1 at 5.  Keene expected to be deployed for several

24  months but, due to health issues, his deployment ended early and he was honorably discharged on

25

26  _____

27  terminated is not contradictory to her statement that she does not remember a phone call in May
    2008.  Keene cites to no portion of the deposition where Lewis responds with an answer that is
28  inconsistent with her affidavit.

1  October 29. *Id.* at 5, 57.

2       On November 1, Keene wrote to Martha Tittle, CCSD's Chief Human Resources Officer,

3  asking to be formally reinstated in the school district, pursuant to USERRA. *Id.* at 57.  He stated

4  that he is "entitled to be reinstated as soon as possible in a position equivalent to my former

5  position with any promotions, bonuses, or entitlements that I would have received had I not been

6  away." *Id.*  Keene further wrote that "[s]ince all of the Region Data Coordinators that were hired

7  at the same [time] as I was four years ago have either left the district or been promoted, it is

8  appropriate that I be assigned to the next available range 41 or higher position for which I am

9  properly qualified." *Id.*  Keene named three positions he believed he was eligible for: a range 43

10  principal position, a range 43 Director II position, and a range 41 Coordinator VI position. *Id.*

11       As a result of that letter, CCSD placed Keene in the position of Data Coordinator III, East

12  Region. ECF No. 40-3 at 22-23.  This position held the same range 40 salary level as Keene's

13  previous position as Data Coordinator III, Northeast Region. *Id.*  CCSD contends that the pay

14  scale and job duties of the two positions are the same, with the only difference being the

15  geographic region covered. *Id.*  Keene agrees that the pay scale for the two positions was the

16  same, but contends that the positions differed widely in their seniority ranking, promotional

17  opportunities, and job requirements. ECF No. 39-1 at 6.  Despite believing he deserved a

18  promotion, Keene accepted the position but continued to "pursue his rights to be properly

19  reemployed with CCSD in 2008 and 2009." *Id.*

20       In March 2009, Keene requested to be returned to a classroom teaching position. ECF No.

21  40-6 at 23-31.  Keene contends that he "requested to return to a classroom teaching position not

22  because that was my request, but because I couldn't stand the job I was in at the time because it

23  wasn't the job that I had left.  Nor was it the job that I should have been entitled to upon my

24  return." ECF No. 43-2 at 67.  Keene also claims that he was being harassed by Robert Alfaro,

25  Superintendent for the East Region. *Id.*  However, Keene's emails and letters around that time

26  indicate that his request was based on medical concerns. *See e.g.*, ECF No. 40-6 at 23-31.

27  / / / /

28

1    After resigning his Data Coordinator III position and returning to the classroom in 2009,

2    Keene applied for multiple administrative positions that would be considered promotions from his

3    teaching position. ECF No. 40-4 at 61.  CCSD states that Keene's applications for those positions

4    went through the same competitive screening process as all other applications for administrative

5    positions. ECF No. 40-7 at 3.  In May 2015, Keene retired from CCSD. ECF No. 39-1 at 6.  He

6    states that "after eight (8) years of CCSD refusing to properly reemploy me, I was forced to

7    resign." *Id.*

8    **II.    <u>ANALYSIS</u>**

9    Summary judgment is appropriate when the pleadings, discovery responses, and affidavits

10   "show there is no genuine issue as to any material fact and that the movant is entitled to judgment

11   as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P.

12   56(c)).  For summary judgment purposes, I view all facts and draw all inferences in the light most

13   favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d

14   1100, 1103 (9th Cir. 1986).

15   If the moving party demonstrates the absence of any genuine issue of material fact, the

16   burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine

17   issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at

18   323.  To establish the existence of a factual dispute, the nonmoving party need not establish a

19   material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be

20   shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

21   *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

22   However, the nonmoving party "must do more than simply show that there is some

23   metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir.

24   2002) (internal citations omitted).  He "must produce specific evidence, through affidavits or

25   admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact

26   finder could find in his favor. *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991);

27   *Anderson*, 477 U.S. at 248-49.  At summary judgment, a court's function is not to weigh the

28

evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

### A.  Keene's Motion for Partial Summary Judgment

Keene moves for partial summary judgment on his claims that CCSD violated USERRA when it allegedly failed to properly reemploy him in May, June, and November 2008.

#### i.   *May 2008 Request for Reemployment*[4]

Viewing all facts in the light most favorable to CCSD, disputed issues of fact remain regarding Keene's alleged request for reemployment in May 2008.  Keene states in his affidavit that he "contacted" Lewis on May 28 to say he would be returning to work and was told by Lewis that his "services were no longer required." ECF No. 39-1 at 5.  During his deposition, Keene stated that he contacted Lewis by email.[5] ECF No. 40-4 at 36-37.  During Lewis' deposition,

---

[4] Keene attached to his motion a Department of Labor ("DOL") letter related to the DOL's investigation of his claim that he sought reemployment with CCSD in May 2008.  The letter states that the DOL determined that CCSD was not in compliance with USERRA.  CCSD argues that this letter is inadmissible on numerous grounds and should not be considered.  Whether I consider this letter or not, issues of fact remain about the alleged May communication.  Therefore, I need not decide the admissibility of the DOL letter at this time.

[5] Keene has not submitted a copy of this alleged email.  In its opposition to Keene's motion, CCSD submits an affidavit from Dan Wray, CCSD's Chief Technology Officer, stating that Wray searched CCSD's email system and could not locate any email from Keene to Lewis on May 28. ECF No. 41-1 at 8-9.  Keene objects that Wray was not disclosed as a witness until June 5, 2015, the day discovery closed. *See* ECF Nos. 32, 33.  CCSD's disclosure of Wray stated only that, "Mr. Wray is likely to have information regarding Plaintiff's employment with Defendant, the allegations raised in Plaintiff's Complaint, and Defendant's affirmative defenses." ECF No. 47-1 at 22.  Keene argues that this disclosure did not provide him with sufficient information to determine whether a deposition of Wray was warranted.  Thus, Keene argues I should not consider the affidavit.  Regardless of whether I consider Wray's affidavit, issues of fact remain about the alleged May communication.  Thus, Wray's affidavit has no effect on resolving these motions.

Nevertheless, I agree that Wray was not properly disclosed. Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires a party to provide the other party with (1) the identity of individuals likely to have discoverable information, and (2) the subjects of the information that the listed individual has and which the disclosing party may use in support of its claims or defenses.  CCSD's disclosure of Wray is devoid of any information that would indicate what kind of information Wray would testify to, thereby depriving Keene of his ability to determine whether to depose Wray. *See LT Game Int'l Ltd. v. Shuffle Master, Inc.*, No. 2:12-CV-01216-GMN-GWF, 2013 WL 321659, at *4 (D. Nev. Jan. 28, 2013) ("while a party is not required to provide a

Keene's attorney stated that Keene alleges he contacted her by phone to inform her of his return. ECF No. 43-4 at 29. Thus, from the current record it is unclear if Keene called Lewis, emailed her, or both, or neither. Lewis denies ever telling Keene that he was terminated and does not remember a communication with him in May. ECF Nos. 40-5 at 16, 41-1 at 4-5. Keene applied for unemployment benefits two days after the alleged communication with Lewis and CCSD did not oppose the application. ECF No. 39-1 at 43. However, the form filled out by CCSD identifies the reason for Keene's separation as "military leave of absence," not termination. *Id.* Thus, there are several issues of fact related to this alleged request for reemployment, including whether and how Keene communicated with Lewis in May 2008 and the substance of any such communication. I therefore deny Keene's summary judgment motion related to the alleged May 2008 request for reemployment.

### ii.   June 2008 Request for Reemployment

On June 12, 2008, Keene sent an email to Lewis and Irvin stating:

> Due to an error at a higher headquarters, my Army orders for the months of June and July were approved by one command . . . but failed to be funded by the other command. . . . As such, I am back in town until July 21st when I report for Iraqi language training.

> The reason I'm letting you know this is that my mother-in-law noticed that my former position has been posted again and I am very much concerned that the schools in the Northeast Region won't have proper support during the AYP appeals. I don't expect to be rehired by the district immediately since I know that I'll be leaving again in about 6 weeks, but wanted to offer to come on as a temp to help support these schools through appeals.

> If you should need me please call. . . .

ECF No. 40-5 at 13. On June 16, Irvin responded by thanking Keene for his "offer to assist" but stating that CCSD had "put a plan in place to handle" the work in his absence. *Id.*

---

detailed narrative of the potential witness' knowledge, the Rule 26(a)(1)(A) disclosure should provide enough information that would allow the opposing party to help focus the discovery that is needed and to determine whether a deposition of a particular person identified as a potential witness might be necessary" (internal citation and quotation omitted)). Therefore, I will reopen discovery for the limited purpose of allowing Keene to depose Wray, should he so choose.

Keene argues that the June 12 email to his immediate supervisors was a request for reemployment under USERRA.  He contends that USERRA does not require a returning service member's request to be in any particular format, as long as the employee conveys to the employer that the employee has returned from service and seeks reemployment.  Keene argues that his June 12 email meets this requirement.

CCSD responds that Keene's June 12 email was merely an offer to temporarily assist CCSD for a period of time rather than an official request for reemployment, and thus did not trigger CCSD's obligations under USERRA.  It contends that under USERRA a proper request for reemployment must be submitted to those with the authority over employment matters, namely CCSD's human resources office.  CCSD further argues that on previous occasions Keene informed Martha Tittle of his absences and therefore was aware that he should contact CCSD's human resources office.  It also argues that Keene's June 12 email does not comport with the reasonable expectations of the parties in light of all the circumstances.  It contends that neither Lewis nor Irvin could have reasonably understood Keene's email to be a request for reemployment.  Alternatively, CCSD argues that even if the June 12 email were determined to be a request for reemployment, USERRA allows for the affirmative defense of undue hardship.  CCSD contends it would have constituted an undue hardship to require it to grant a temporary assignment and that USERRA does not require employers to create temporary work.

Pursuant to USERRA, "any person who is absent from a position of employment . . . by reason of service in the uniformed services shall be entitled to . . . reemployment rights and benefits" if (1) the employee has given advance notice of his uniformed service to his employer prior to deployment; (2) the absence does not exceed five years; and (3) the employee applies for reemployment within the applicable time frame. *See* 38 U.S.C. § 4312(a)(1)-(3), (e)(1)(D).  Section 4312(h) states that "[i]n any determination of a person's entitlement to protection . . . , the timing, frequency, and duration of the person's training or service . . . , shall not be a basis for denying protection."

1    One of USERRA's express purposes is "to encourage noncareer service in the uniformed

2    services by eliminating or minimizing the disadvantages to civilian careers and employment

3    which can result from such service." *Id.* § 4301(a)(1).  Reemployment protections for service

4    members are "to be liberally construed for the benefit of those who left private life to serve their

5    country. . . ." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (discussing

6    the Selective Training and Service Act of 1940, a precursor to USERRA).

7    USERRA does not require an employee's application for reemployment to follow any

8    particular format. 20 C.F.R. § 1002.118.  For example, the request can be either written or oral.

9    *Id.*  USERRA's regulations state that the "application should indicate that the employee is a

10   former employee returning from service in the uniformed services and that he or she seeks

11   reemployment with the pre-service employer.  The employee is permitted but not required to

12   identify a particular reemployment position in which he or she is interested." *Id.*  Pursuant to

13   § 1002.119, an "application must be submitted to the pre-service employer or to an agent or

14   representative of the employer who has apparent responsibility for receiving employment

15   applications.  Depending upon the circumstances, such a person could be a personnel or human

16   resources officer, or a first-line supervisor."

17   The issue of whether Keene submitted an "application for reemployment" in accordance

18   with § 4312(a)(3) is a question of law. *See Serricchio v. Wachovia Sec. LLC,* 658 F.3d 169, 181

19   (2d Cir. 2011); *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998).  Only twice

20   have courts held that an employee's request for reemployment after a period of military service

21   was too ambiguous to meet USERRA's requirements.  The first, *Baron v. United States Steel*

22   *Corp.*, involved a plaintiff who notified his former employer that "he was going to try to go to

23   college and that if he did not succeed in getting admitted to college, he would come back . . . and

24   request work." 649 F. Supp. 537, 540 (N.D. Ind. 1986).  The court held that this was not a request

25   for reemployment under USERRA and therefore did not trigger the employer's duty to reemploy.

26   *Id.* at 541-42. The second, *McGuire v. United Parcel Service*, involved an employee who had

27   only inquired about the procedures for obtaining reemployment, to which the employer responded

28

1    and directed him to contact the human resources supervisor. 152 F.3d at 677-78.  The Seventh

2    Circuit held that the plaintiff's inquiry into the procedures for obtaining his job back was not

3    itself an application for reemployment as required by USERRA. *Id.* at 678.  The court stated

4    while an application need not follow any particular format, it must involve "more than a mere

5    inquiry." *Id.* at 676 (citing *Baron*, 649 F. Supp. at 541).  "[A] case-by-case determination

6    focusing on the intent and reasonable expectations of both the former employee and employer, in

7    light of all the circumstances, has been held to best serve the goals of the Act." *Id.* at 677-678

8    (internal quotations and citations omitted).

9           Unlike in *Baron*, Keene's June 12 email to his supervisors was not a notification that he

10   may look to be reemployed at some indeterminate point in the future.  Nor was it a mere inquiry

11   regarding procedures for reemployment, as in *McGuire*.  Rather, it was a request for

12   reemployment that, under USERRA, obligated CCSD to rehire him.  In the email, Keene wrote

13   that he was back in town upon completion of his military training and asked to be put back in his

14   prior position on a temporary basis until his next military assignment.  The fact that he would

15   return to the position only until his next military assignment is not a basis to deny him protection

16   under USERRA. *See* 38 U.S.C. § 4312(h).  Indeed, it was no different than the previous occasions

17   when Keene returned to CCSD for short periods of time in between his military training

18   obligations.

19          Additionally, USERRA does not require that employees contact their employer's human

20   resources office for their reemployment request to be proper.  The USERRA regulations state that

21   the application can "be submitted to the pre-service employer" and that "depending upon the

22   circumstances, such a person could be a personnel or human resources officer, or a first-line

23   supervisor." 20 C.F.R. § 1002.119.  Lewis was CCSD's Director of Research and School

24   Improvement and Keene's immediate supervisor. ECF No. 40-5 at 15.  Irvin was the

25   Superintendent for the Northeast Region and was also one of Keene's immediate supervisors.

26   ECF Nos. 40-4 at 10-11, 40-5 at 13.  When Keene previously requested military leave, he emailed

27   those requests to Lewis and Irvin. ECF No. 40-5 at 9-11.  When Keene applied for extended

28

1   military duty, his application required authorization from his employer, which was signed by

2   Lewis. ECF No. 43-6 at 12.

3           Admittedly, Keene's email contains equivocal language.  For example, he states: "I don't

4   expect to be rehired by the district immediately since I know that I'll be leaving again . . . but

5   wanted to offer to come on as a temp." ECF No. 40-5 at 13.  However, USERRA is to be liberally

6   construed in favor of those who serve their country in order "to encourage noncareer service in

7   the uniformed services." 38 U.S.C. § 4301(a)(1); *Fishgold*, 328 U.S. at 285.  Viewed in that light,

8   and evaluating the totality of the circumstances, Keene's email provided reasonable notice to

9   CCSD that he wished to have his job back.  It therefore met the requirements under Section 4312

10  of USERRA and thus CCSD violated Keene's rights by failing to reemploy him upon receipt of

11  his June request.

12          CCSD's argument that reemploying Keene in June would have constituted an undue

13  hardship is unsupported.  Under USERRA, reemployment is not required if, "in the case of a

14  person entitled to reemployment . . . , such employment would impose an undue hardship on the

15  employer." 38 U.S.C. § 4312(d)(1)(B).  Undue hardship in this context means "actions requiring

16  significant difficulty or expense," in light of various factors. *Id.* § 4303(15).  CCSD offers no

17  evidence that rehiring Keene to his previous position would have been an undue hardship.  Keene

18  was not asking for a temporary position to be created for him, he was asking to temporarily return

19  to his previous position until his next military assignment.  It is undisputed that the position was

20  vacant at the time Keene made the request.  Therefore, there is no evidence that allowing Keene

21  to return and fill the vacant position that he previously held would have imposed any hardship on

22  CCSD, let alone an undue one.  I therefore grant summary judgment in Keene's favor with

23  respect to his June request for reemployment.

24                      *iii.     November 2008 Request for Reemployment*

25          On November 1, 2008 Keene wrote to Martha Tittle, CCSD's Chief Human Resources

26  officer, asking to be formally reinstated in the school district. ECF No. 39-1 at 57.  Neither party

27  disputes that this letter was a formal request for reemployment under USERRA.  Keene was

28

1    offered the position of Data Coordinator III, East Region. ECF No. 40-3 at 22.

2            Keene argues that CCSD violated USERRA when it failed to reemploy him in the position

3    that he would have obtained if not for his absence due to uniformed service.  Under USERRA,

4    this is known as the "escalator" position or principle. 20 C.F.R. § 1002.191.  Keene argues that by

5    2008, other employees that started at the same time as him had been promoted to more senior

6    positions.  In support of his argument, Keene offers a spreadsheet listing the "Appointments to

7    and Promotions, Reassignments/Transfers, and Resignations from the position of Coordinator III,

8    Region Data Specialist." ECF No. 39-1 at 46.  The spreadsheet notes that two of the five

9    individuals who were appointed to a Coordinator III position around the same time as Keene were

10   "appointed" to positions as assistant principals in 2007. *Id.*  The other three had retired or

11   resigned from CCSD. *Id.*  Thus, Keene argues that under the escalator principle he was entitled to

12   a promotion when he returned from duty.

13           Keene further argues that even if he was not entitled to an escalator position upon return,

14   CCSD violated his rights by not giving him back his pre-service position as Data Coordinator III,

15   Northeast Region.  Instead, CCSD offered him the position of Data Coordinator III, East Region,

16   which Keene claims has different seniority ranking, promotional opportunities, and job

17   requirements. ECF No. 39-1 at 6.  Keene argues that under Section 4313 of USERRA, employees

18   who have been absent due to military service for fewer than 91 days must be reemployed in

19   accordance with the following order of job priority: (1) the escalator position (i.e., the position

20   that he would have attained if not for his absence due to uniformed service); (2) if not qualified

21   for the escalator position, his pre-service position.  Keene contends that if CCSD had properly

22   reemployed him in June 2012 when he had requested it, he would have continued in his position

23   as Data Coordinator III, Northeast Region until he left for deployment to Iraq on September 7,

24   2009.  Thus, his period of military service would have been 63 days: from September 7 to

25   November 9.  He contends CCSD therefore violated USERRA by not giving him back his pre-

26   service position as Data Coordinator III, Northeast Region.

27   / / / /

28

CCSD responds that USERRA's escalator principle requires the employee to be reemployed in the position that he would have attained with reasonable certainty if not for his uniformed service.   It argues that Keene has presented no evidence that it was reasonably certain that he would have been automatically promoted had he not left to serve in the military.  Principal and assistant principal positions are not automatically given as promotions.  Rather, candidates seeking such positions must go through a rigorous application process.  CCSD argues that Keene never applied for any promotional positions prior to his deployment and therefore was not entitled to be placed in one when he returned.  CCSD therefore contends Keene was not qualified for an escalator position in November 2008.

Additionally, CCSD argues that Keene's June 12 email was not a proper request for reemployment under USERRA; therefore his period of military service began in May 2008 (the last time he worked at CCSD prior to his deployment) and ended in November 2008 (when he returned).  Thus, CCSD asserts Keene was absent well over 91 days.  It argues that pursuant to Section 4313 of USERRA, for employees who have been absent due to military service for a period over 90 days, the order of job priority is: (1) the escalator position; (2) the employee's pre-service position or a position of like seniority, status and pay.  CCSD argues that while Keene was not given his pre-service position, he was placed in the position of Data Coordinator III, East Region, which is a position of like seniority, status, and pay to his previous position.  Thus, it contends that it complied with USERRA's requirements.

As explained above, Keene's June 12 email was a request for reemployment under USERRA.  Had CCSD complied with Keene's request, he would have been reemployed from then through his September 7 deployment to Iraq. ECF No. 39-1 at 5.  CCSD offers no evidence or argument for any other possibility.  Additionally, neither party disputes that on all prior occasions, after Keene's military obligations ended, he promptly returned to work at CCSD until his next military assignment.  Reviewing all evidence and making all reasonable inferences in the light most favorable to CCSD, Keene would have continued to work at CCSD until his deployment.  Therefore, his period of military service was from September 7, 2008 to November

9, 2008, a total of 63 days.

Section 4313(a)(1) of USERRA states that a person entitled to reemployment upon completion of a period of service, shall be reemployed in accordance with the following order of priority:

> [I]n the case of a person whose period of service in the uniformed services was for less than 91 days—
>
> (A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service [i.e., the escalator position] . . . ; or
>
> (B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, only if the person is not qualified to perform the duties of the position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

38 U.S.C. § 4313(a)(1).  Section 1002.191 of USERRA's regulations explains the requirements of reemployment:

> As a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service.  This position is known as the escalator position.  The principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events.  The escalator principle requires that the employee be reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service.

20 C.F.R. § 1002.191.

Keene offers insufficient evidence to support his argument that he was entitled to a promotion upon return from service.  His spreadsheet showing that two of his colleagues were promoted to assistant principal positions does not support a "reasonable certainty" that Keene would have been promoted to that position. *Id.*  The two promoted individuals were not automatically promoted but rather applied and went through CCSD's application process before being selected. ECF No. 43-3 at 23.  In his November 2008 letter to Tittle, Keene listed three positions he believed he was eligible for: a range 43 principal position, a range 43 Director II position, and a range 41 Coordinator VI position. ECF No. 39-1 at 57.  Keene admits that he did not apply for any of these promotional positions prior to his deployment. ECF No. 40-4 at 51-52.

Keene has not submitted evidence that it was reasonably certain that he would have been promoted had he remained continuously employed at CCSD in the Data Coordinator III position.

Because there is no evidence that Keene was qualified for an escalator position pursuant to USERRA, the next job priority is to put Keene back in his pre-service position. 38 U.S.C. § 4313(a)(1)(B).  This was not done.  Rather than reemploy Keene in his previous position as Data Coordinator III, Northeast Region, CCSD reemployed him in a different Data Coordinator III position.  Keene's previous position had been filled during his absence and the Data Coordinator III, East Region position was vacant. ECF No. 39-1 at 80.  However, USERRA's regulations are clear that an employer cannot "refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee." 20 C.F.R. § 1002.139(a).  Therefore, CCSD violated USERRA when it failed to give Keene back his pre-service position when he returned in November from his deployment to Iraq.  Summary judgment is therefore granted in Keene's favor related to the November 2008 request for reemployment.

### B. CCSD's Motion for Summary Judgment

CCSD has moved for summary judgment on all of Keene's claims.  It also moves for summary judgment on whether Keene is entitled to liquidated damages.

#### i. *Discrimination and Retaliation Claims (Counts 1 and 2)*

CCSD first argues that Keene was never subjected to an adverse employment action and therefore cannot maintain claims for discrimination or retaliation.  It also argues that even if an adverse employment action occurred, there is no evidence that Keene's military service was a motivating factor behind it.

##### a. *The May, June, and November 2008 Reemployment Requests*

USERRA prohibits discrimination and retaliation against persons because of their service in the uniformed services. *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007);

1    *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).[6]  A violation of USERRA occurs

2    when an employee's "membership, application for membership, service, application for service,

3    or obligation for service in the uniformed services is a motivating factor in the employer's action,

4    unless the employer can prove that the action would have been taken in the absence of such

5    membership, application for membership, service, application for service, or obligation for

6    service." 38 U.S.C. § 4311(c)(1).  "The employee first has the burden of showing, by a

7    preponderance of the evidence, that his or her protected status was a substantial or motivating

8    factor in the adverse employment action; the employer may then avoid liability only by showing,

9    as an affirmative defense, that the employer would have taken the same action without regard to

10   the employee's protected status." *Leisek*, 278 F.3d at 899.

11   　　　CCSD's motion does not address the May 2008 communication in this regard.[7]  I have

12   found that (1) Keene's June 12 email was a request for reemployment under USERRA and (2)

13   CCSD should have reemployed Keene in his pre-service position when he returned in November.

14   Thus, Keene has presented evidence of adverse employment actions.

15   　　　Issues of fact remain as to whether Keene's military service was a motivating factor

16   behind CCSD's responses to his May, June, and November requests.  Keene states that while his

17   requests for military leave were always granted, they were met with hostility by his direct

18   supervisor Lewis. ECF No. 39-1 at 3-4.  He also contends that in early 2008 Lewis told him that

19   he needed to "make up his mind" and decide whether he was working for CCSD or the Army. *Id*.

20   Bolstering that argument is the fact that while Keene was rated highly in his performance

21

22

---

23   　　　[6] The Ninth Circuit has noted that "[a]lthough the term 'retaliation' is not used in USERRA, the gravamen of [Section 4311] is to prohibit adverse employment actions taken in

24   retaliation for the exercise of the rights provided by USERRA." *Wallace* 479 F.3d at 625 n.1 (internal citations omitted).

25   　　　[7] Even if CCSD had addressed it, issues of fact remain.  Keene states that on May 28 he

26   contacted Lewis to inform her that he would be returning to work the following day. ECF No. 39-1 at 5.  Keene alleges that Lewis told him that his "services were no longer required." *Id.*  Thus,

27   viewing the facts in the light most favorable to Keene, issues of fact remain regarding the alleged May request for reemployment.

28

reviews, Lewis wrote that "2007-2008 has been a difficult school year for Dr. Brian Keene. . . . His time and efforts were divided between his duty to our country . . . and his responsibilities here at CCSD.  Dr. Keene was unable to perform many of the tasks normally completed by data coordinators for the NE Region as he was absent over 70 days." ECF No. 40-6 at 2-3.

Making all reasonable evidentiary inferences in the light most favorable to Keene, a jury could find that Keene's military service was a motivating factor behind the adverse employment actions in June and November, and the alleged adverse employment action in May.  I therefore deny CCSD's summary judgment motion on Keene's discrimination and retaliation claims as they relate to the May, June, and November requests.

### b. Adverse Employment Acts after November 2008, Including Keene's Reemployment as a Teacher Since April 2009

Keene's complaint also alleges CCSD discriminated and retaliated against him after November 2008.  CCSD seeks summary judgment, arguing that there is no evidence that Keene was subjected to any adverse employment actions after his return from military service in November 2008.  Specifically, it contends that Keene's reemployment as a teacher in 2009 was not a violation of USERRA as Keene requested the transfer and voluntarily resigned his position as Data Coordinator III, East Region.  It further contends that there is no evidence that Keene's military service was a motivating factor behind any actions after November 2008.

Keene disputes that he voluntarily resigned from his position as Data Coordinator III, East Region.  He argues that after months of trying to get back his job as Data Coordinator III, Northeast Region, and after "the constant harassment of his supervisors, Lewis and Robert Alfaro," he was forced to resign.  He does not dispute that he was granted multiple periods of military leave after November 2008.  He also does not dispute that he sent various letters and emails to CCSD which indicated that his reason for requesting a return to a teaching position related to personal health concerns.  However, he argues that these emails were sent as a courtesy to his superiors to let them know of his plans to resign, but that the real reason for his resignation was CCSD's failure to return him to his pre-service position and harassment by his supervisors.

1  Keene cites various cases involving constructive discharge and argues that his repeated requests
2  to be properly reemployed in his previous position and the "constant harassment" by Lewis and
3  Alfaro constituted an intolerable and discriminatory situation which forced him to resign.

4      I grant summary judgment to CCSD on Keene's discrimination and retaliation claims
5  related to alleged adverse employment actions after November 2008.  Keene's allegations about
6  events after November 2008 stem from his belief that he was not properly reemployed when he
7  returned from deployment.  However, CCSD's inaction in not reversing its decision about what
8  position Keene was entitled to upon his return is not a new and discrete adverse employment
9  action, rather, it was the continuing effect of CCSD's original November 2008 decision. *See*
10 *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 619 (2007), *superseded by statute*, Lilly
11 Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2, 123 Stat 5 ("A new violation does not occur,
12 and a new charging period does not commence, upon the occurrence of subsequent
13 nondiscriminatory acts that entail adverse effects resulting from the past discrimination.").[8]

14     Furthermore, Keene provides no evidence that his military service was a motivating factor
15 in any alleged adverse employment action after November 2008.  Keene voluntarily resigned
16 from his position as Data Coordinator III, East Region.  ECF No. 40-6 at 23-31.  Several emails
17 and letters from Keene to Lewis and others at CCSD around that time indicate that his request
18 was based on medical concerns. *Id.*  Keene stated in his deposition that, "I requested to return to a
19 classroom teaching position not because that was my request, but because I couldn't stand the job
20 I was in at the time because it was not the same job that I had left.  Nor was it the job that I should

_____

22   [8] The Lilly Ledbetter Fair Pay Act overturned a portion of the Supreme Court's *Ledbetter*
   decision as it related to "claims of discrimination in compensation under Title VII." Lilly
23 Ledbetter Fair Pay Act § 6.  However, the discriminatory action alleged by Keene is not related to
   compensation as there is no dispute that the pay scale for both positions was the same.  Thus, the
24 Supreme Court's analysis in *Ledbetter* is still applicable here. *See, e.g., Pouncil v. Tilton*, 704
   F.3d 568, 580 (9th Cir. 2012) (continuing to apply *Ledbetter's* analysis regarding new "discrete
25 acts" versus "adverse effects resulting from the past" acts).

1    have been entitled to upon my return." ECF No. 43-2 at 67.  Even taken as true, this does not state

2    a claim for retaliation or discrimination.  Keene presents no evidence that he was forced to resign,

3    or that his military service was a motivating factor behind his alleged forced resignation.

4         Regarding Keene's allegation that he was being harassed by supervisors, the only

5    evidence of this is a statement in his deposition in which he says that his supervisor, Alfaro, was

6    harassing him. *Id.*  However, the deposition pages cited by Keene give no context to the alleged

7    harassment.  For example, there is no discussion of when the harassment began, what prompted it,

8    the substance of the harassment, or any other details.  Nor is there evidence that any alleged

9    harassment by Alfaro was done because of Keene's military service.

10        Even viewing all facts in the light most favorable to Keene, he has not provided evidence

11   raising an issue of fact that CCSD retaliated or discriminated against him in connection with his

12   decision to resign his position and return to a teaching position in 2009.  Nor does he provide

13   evidence of other adverse employment actions occurring after his return in November 2008.  I

14   therefore grant summary judgment to CCSD on Keene's discrimination and retaliation claims

15   based on actions that occurred after November 2008.

16                   *ii.    Failure to Provide Rights and Benefits (Count 3)*

17        Count 3 of Keene's complaint alleges a claim for failure to provide rights and benefits

18   under § 4316(a).  Keene alleges that CCSD denied him "the rights and benefits determined by

19   seniority and such other rights and benefits not determined by seniority that Plaintiff would have

20   attained if he had remained continuously employed." ECF No. 1 at 13.  In an earlier section of the

21   complaint entitled "Allegations Common to All Claims," Keene alleges numerous instances after

22   November 2008 where he requested, but was denied, a position of like "seniority, status, and pay"

23   to his previous administrative position as Data Coordinator III, both before and after he returned

24   to a teaching position. *Id.* at 7-11.  The complaint also alleges that CCSD failed to follow up with

25

26

27

28

him about supplemental pay he may be entitled to due to his military service, and that CCSD failed to properly fund his retirement account. *Id.* at 11.

CCSD moves for summary judgment, arguing that there is no evidence that Keene was entitled to higher pay when he was rehired in November 2008. Keene was put in a position with the same rights and benefits as his pre-service position. CCSD offers evidence that it does not promote people to administrative positions on a pure seniority basis, but rather has an application process for such positions. ECF No. 40-7 at 2-3. CCSD also contends that Keene was not entitled to any supplemental compensation, and that Keene has not provided any evidence to the contrary. *Id.* at 11-12. CCSD next provides evidence that Keene's retirement account was re-credited with all retirement credit he would have attained while on military leave. *Id.* at 14-17. Finally, CCSD argues that Keene has failed to bring a claim under § 4318, governing pension plans, and thus he is not entitled to relief according to this section regarding his retirement plan.

Keene responds that he does not have to bring a claim specifically under § 4318 to be entitled to receive the employment benefits to which he is entitled. He also argues that he received correspondence from CCSD regarding supplemental pay and that he reached out to CCSD about this and received no response. He contends that if he had been promoted properly in November 2008, he would have received an increase in salary.

Under USERRA, a person returning to employment from military service "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional security and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4316(a). Section 4316(a) does not govern whatever compensatory damages may be due for an employer's failure to reemploy a returning service member. *United States v. Nev.*, 817 F. Supp. 2d 1230, 1249 (D. Nev. 2011). Rather, Section 4316(a) addresses

1    "the seniority and other rights and benefits determined by seniority" to which a person "who *is*

2    reemployed" is entitled. § 4316(a). *Id.* (emphasis in original).

3          I grant CCSD's motion for summary judgment on this claim except for any claim based

4    on Keene's reemployment in November 2008 in the position of Data Coordinator III, East Region

5    rather than his pre-service position of Data Coordinator III, Northeast Region.  While CCSD

6    argues that Keene's new position carried the same pay and job duties as his pre-service position

7    (ECF No. 40-3 at 22), Keene states that the new position was different in "seniority ranking,

8    promotional opportunities, and job requirements." ECF No. 39-1 at 6.  Neither side has submitted

9    any evidence supporting their positions other than competing affidavits. *See id.* (Declaration of

10   Keene); ECF No. 40-3 at 22 (Declaration of Hilary Engel, a former Director as CCSD).

11   Therefore, taking all facts in the light most favorable to Keene, there are material issues of fact

12   related to Keene's November 2008 reemployment.

13         But Keene has failed to support his claim that CCSD failed to provide him rights and

14   benefits under § 4316(a) in any other context.  While Keene asserts that he received

15   correspondence from CCSD regarding supplemental pay, he offers no evidence showing that he

16   was entitled to additional retirement benefits or supplemental pay after November 2008 and that

17   CCSD failed to provide those to him.  Summary judgment in favor of CCSD on that claim is

18   appropriate.

19              *iii.    Liquidated Damages*

20         Finally, CCSD argues that Keene should be precluded from seeking liquidated damages

21   on any of his claims because, as a matter of law, he cannot meet his burden of proving that

22   CCSD's actions were willful.  CCSD argues that it took extensive steps to comply with USERRA

23   and, specifically with regard to Keene's employment, has engaged in "long-term efforts" to

24   ensure compliance. ECF No. 40 at 25.  Keene responds that CCSD knew of its obligations under

25   USERRA when it failed to properly reemploy him and that a reasonable jury could find that

26   CCSD's actions were willful.

27

28

Section 4323(d)(1) of USERRA provides for liquidated damages "if the court determines that the employer's failure to comply with the provisions of [USERRA] was willful." USERRA does not define willfulness. In other contexts, willfulness has been found when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 615 (1993) (citations and quotations omitted); *see also Nevada*, 817 F. Supp. 2d at 1250. Intent to violate the statute is not necessary, but it is also not sufficient that the employer simply knew of its potential applicability. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-28 (1985) (analyzing the liquidated damages provision of the Age Discrimination in Employment Act). Keene has the burden of proving willfulness, which may be shown by circumstantial evidence. *Nevada*, 817 F. Supp. 2d at 1251.

Here, issues of fact remain as to whether CCSD's acts were willful. As discussed above, questions remain as to CCSD's knowledge, intention, and motivation for not rehiring Keene in May and June, as well as not returning him to his pre-service position in November. Thus, I deny summary judgment as to liquidated damages on these claims.

## III.   CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Richard B. Keene's motion for partial summary judgment **(ECF No. 39) is GRANTED in part and DENIED in part**. Summary judgment is granted in Keene's favor as to the June and November requests for reemployment. It is denied as to the alleged May request for reemployment.

IT IS FURTHER ORDERED that defendant Clark County School District's motion for summary judgment **(ECF No. 40) is GRANTED in part and DENIED in part**. Summary judgment is granted in CCSD's favor as to Keene's discrimination and retaliation claims related to actions after November 2008. It is also granted as to Keene's claim for failure to provide rights and benefits under § 4316(a), except those related to his November 2008 reemployment. It is denied in all other respects.

1    IT IS FURTHER ORDERED that discovery is reopened for 30 days, only for the limited
2 purpose of allowing Keene to depose Dan Wray, CCSD's Chief Technology Officer, should he so
3 choose.
4    DATED this 30th day of June, 2016.
5
6                                              _____
7                                              ANDREW P. GORDON
                                               UNITED STATES DISTRICT JUDGE
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28